IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 06-04127-CV-C-NKL |
| BLUEWOOD, INC., ) ) | |
| Defendant. ) | |

**ORDER**

Pending before the Court is Defendant Bluewood, Inc.'s ("Bluewood") Motion for a New Trial [Doc. # 97]. For the reasons stated below, Bluewood's Motion is DENIED.

**I.   Factual and Procedural Background**

Between December 25 and December 27, 2004, burst water pipes caused damage to two buildings comprising Bluewood, Inc.'s ("Bluewood") Broadmoor Apartments in Jefferson City, Missouri (Compl. ¶ 7). On January 28, 2005, Bluewood submitted a claim for indemnification against Cincinnati under Cincinnati Insurance Policy No. CPP 072 41 84 (the "Policy"). The parties disputed whether the original water damage led to mold damage as a result of Bluewood's delay in reporting and effectively managing the water damage. Cincinnati moved for declaratory relief claiming that it was prejudiced by Bluewood's failure to provide timely notice and, therefore, owed no reimbursement under the Policy. (Compl. ¶ 19). Bluewood counterclaimed for breach of contract, vexatious

1

refusal to pay on an insurance contract, negligent misrepresentation and fraudulent misrepresentation. (Bluewood Answer ¶¶ 9-55). On November 8, 2006, this Court dismissed Bluewood's claims for negligent and fraudulent misrepresentation because they were preempted by other remedies available under Missouri law. (Doc. # 24). After a five-day trial, a jury denied Bluewood any recovery beyond the $93,283.00 Cincinnati had previously paid to Bluewood on its claim.

Bluewood alleges several errors that it believes justify a new trial. The alleged errors fall into two general categories: 1) the Court failed to apply the proper damages standard under Missouri law; and 2) the Court erred in admitting Cincinnati's expert witness testimony and excluding Bluewood's proposed testimony of real estate expert David Nunn. Bluewood further argues that the Court erred in dismissing its claims for negligent and fraudulent misrepresentation.

## II. Bluewood's Motion for a New Trial

### A. Legal Standard - New Trial

A new trial is warranted when the initial trial results in a "miscarriage of justice." *Harris v. Secretary, U.S. Dep't of Army*, 119 F.3d 1313, 1318 (8th Cir. 1997). Such a miscarriage of justice may be the result of "a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). To determine if the new trial should be granted, "the trial court can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Harris*,

2

119 F.3d at 1318 (quotation omitted). In order to grant a new trial based on trial court error, the Court must determine that the evidentiary or instructional ruling was so prejudicial that retrial would likely produce a different result. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1200 (8th Cir. 1990).

    **B.**    **Discussion - Bluewood's Grounds for New Trial**

        **1.**    **Missouri Law on Partial Loss Under Insurance Contracts**

Under Missouri law, the language of the insurance contract determines the measure of damages for a partial loss. *Lupo v. Shelter Mutual Ins. Co.*, 70 S.W.3d 16, 19 (Mo. Ct. App. 2002); *Dollard v. Depositors Ins. Co.*, 96 S.W.3d 885, 889 (Mo. Ct. App. 2002). If a term within an insurance contract is clearly defined, the contract definition controls. *State Farm Mut. Auto. Ins. Co. v. Ballmer*, 899 S.W.2d 523, 525-26 (Mo. 1995). Bluewood does not directly dispute the enforceability of the contract language, but rather argues that 1) Section 379.150 R.S.Mo. applies to the damages in this case, and; 2) the Court should substitute the definition of "actual cash value" as developed in Missouri common law for the definition of "actual cash value" as set forth in the contract. The Court disagrees.

    Section 379.150 provides:

> Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as *before the fire*, at the option of the insured. (Emphasis added).

3

By its terms, Section 379.150 applies to fire losses. Bluewood argues that, starting with the Missouri appellate court's decision in *Cady v. Hartford Fire Ins. Co.*, 554 S.W.2d 499, 503 (Mo. Ct. App. 1977), section 379.150 was extended to cover non-fire losses. In *Cady*, the court denied coverage altogether for windstorm damage and said that "plaintiff's argument in point III of his brief regarding the effect of Section 379.150 R.S.Mo. (1969) is theoretically correct but inapplicable because on this record proof of existence and extent of damage caused by windstorm is insufficient to show that damage occurred to the plaintiff's property . . . ." *Id*. While it is unclear to the Court what argument was raised in *Cady*, three subsequent Missouri appellate decisions cited *Cady* for the possibility that section 379.150 may apply to non-fire cases. However, no court ruled on the issue. *Lopez v. Am. Family Mut. Ins. Co.*, 96 S.W.3d 891, 893 (Mo. Ct. App. 2002) ("No issue is raised whether the statute applies to the loss."); *Herring v. Prudential Property & Casualty*, 96 S.W.3d 893, 894 (Mo. Ct. App. 2002) ("The statute specifically refers to losses by fire. For purposes of the motion for summary judgment only, Prudential (and apparently the trial court) assumed that it applies."); *Porter v. Shelter Mut. Ins. Co.*, 2007 Mo. App. LEXIS 1408 (Mo. Ct. App. 2007). This Court has found no Missouri case which has ruled that Section 379.150 applies to non-fire loss insurance cases.

Moreover, the Court has reviewed decisions in other jurisdictions to identify any case that extends "fire damage" statutes to include other causes of loss. The Court has found none. In *State Farm v. Patrick*, 647 So.2d 983 (Fla. Ct. App. 1994), a Florida

4

appellate court refused to extend its loss statute to hurricane damage because the statute specified only fire or lightning. In *McNeely v. South Carolina Farm Bureau Ins. Co.*, 190 S.E.2d 499 (S.C. 1972), the Supreme Court of South Carolina refused to extend its loss statute to windstorm damage because the legislature could have included wind as a covered cause, but did not. Bluewood is correct that this Court must try to predict how the highest court of a state would rule on the issue. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). However, this Court cannot substitute its judgment for that of the Missouri legislature when the clear language of section 379.150 does not apply to fire loss. The contract language controls the award of damages in this case.[1]

Under the terms of the insurance policy Bluewood was entitled to the actual cash value for damaged property which "means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence." Bluewood argues that "actual cash value" means "fair market value" under Missouri law. *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 712 n.6 (Mo. banc 1984); *Pannell v. Missouri Ins. Guaranty Assoc.*, 595 S.W.2d 339, 355 (Mo. Ct. App. 1980); *Myers v. Am. Indem. Co.*, 457 S.W.2d 468, 471 (Mo. Ct. App. 1970). *DeWitt*, *Pannell* and *Myers* do not stand for the proposition that Missouri common law's developed definition of "actual cash value" may or must be substituted for definitions provided within an enforceable contract. Indeed, in

---

[1] The Court therefore properly submitted Jury Instruction No. 14, based upon the language of the Policy, instead of Bluewood's requested Instruction D, based on the fair market value before and the fair market value after the loss.

5

*DeWitt*, the court enforced the policy language. In *Myers* and *Pannell*, there did not appear any policy definition for "actual cash value" and those courts substituted the Missouri common law definition for "actual cash value." *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 712 n.6 (Mo. banc 1984). These cases do not support a definition of damage that is contrary to the language of the Policy. Bluewood also asserts that "replacement cost" means "fair market value" under "applicable Missouri substantive law." (Bluewood Mot. ¶ 2(a)(3)). Bluewood is incorrect. Bluewood has not cited, nor has this Court found, any support for the proposition that a measure of damages developed under Missouri law can replace enforceable contract language. *See Porter v. Shelter Mut. Ins. Co.*, 2007 Mo. App. LEXIS 1408 (Mo. Ct. App. 2007); *Dollard v. Depositors Ins. Co.*, 96 S.W.3d 885, 889 (Mo. Ct. App. 2002).

### 2. Expert Testimony

Bluewood argues that the Court erred in sustaining Cincinnati's objection to real estate appraisal expert David Nunn's ("Nunn") testimony regarding the fair market value of Bluewood's damaged property. (Bluewood Mot. ¶ 2(a)(1)). Because Nunn's testimony was excluded, Bluewood argues that the Court prejudicially precluded submission of relevant evidence on 1) the level of depreciation at the Broadmoor Apartments; 2) "fair market value" as a measure of damages; and, 3) Bluewood's vexatious refusal to pay claim.

Bluewood first argues that it was prejudiced because Nunn's testimony was relevant to determining "depreciation" and/or "obsolescence" under the insurance

6

contract. *Id.* Bluewood offered Nunn's "fair market value" testimony for purposes of establishing fair market value before and after the loss, which this Court determined is not the correct standard for measuring damages where the contract language controls and no Missouri statute on damages applies. (Tr. 12:16); (Doc. 84 ¶ 5(e)). Fed. R. Evid. 403 provides that relevant evidence may be excluded if it is substantially outweighed by unfair prejudice or confusion of the issues. There may be marginal relevance to Nunn's testimony on the issue of depreciation, but it is far outweighed by the confusion it would cause on the issue of damages. Testimony about fair market value before and after the loss would unfairly mislead the jury and confuse the ultimate issues in the trial by suggesting that the jury could assess damages based on fair market value instead of replacement cost minus depreciation.

Bluewood also argues that it was prejudiced because 1) had the jury, after hearing Nunn's testimony, believed that 2) Cincinnati exaggerated the amount of depreciation; then Bluewood may have prevailed on its claim for vexatious refusal to pay an insurance claim. (Bluewood Mot. ¶ 2(a)(4)). In order to sustain an action for vexatious refusal to pay an insurance claim under § 375.296 R.S.Mo., the plaintiff must show that the insurer's refusal to pay is willful and without reasonable cause, as the facts would appear to a reasonable and prudent person. *Joachim Savings & Loan Ass'n v. State Farm Fire & Casualty Co.*, 764 S.W.2d 648, 651 (Mo. Ct. App. 1988). However, the mere fact that an insured prevails on a disputed point of coverage is not sufficient in itself to award damages for vexatious refusal to pay. *See Hopkins v. American Economy Ins. Co.*, 896

7

Case 2:06-cv-04127-NKL   Document 105   Filed 12/12/07   Page 7 of 13

S.W.2d 933 (Mo. Ct. App. 1995). Cincinnati made payments to Bluewood during their dispute which the jury left with Bluewood. The weight of the evidence supported the jury's finding that Bluewood and Cincinnati had a legitimate dispute over insurance coverage. Even if the jury determined that Cincinnati's valuation of the "depreciation and obsolescence" were erroneous, the resulting prejudice was minimal. A new trial for such a marginal issue is unwarranted. More importantly, Nunn's testimony was properly excluded under Fed. R. Civ. P. 403, so no error in fact occurred.

Bluewood next offers conclusory allegations that the Court erred when it permitted the opinion testimony of Cincinnati witnesses Tim Gardner and Ivan Turner as to the extent of the damage at Broadmoor Apartments, remediation techniques Bluewood jeopardized by delayed notice and related valuations as to Bluewood's loss. (Bluewood Mot. ¶¶ 2(d)(e)). Bluewood contends that such testimony provided the jury a "roving commission" to base its verdict on unreliable testimony. *Id.* Federal Rule of Evidence 702 requires the Court to make a determination as to whether a witness qualified as an "expert by knowledge, skill, experience, training, or education" may give opinion testimony if, and to the extent, "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." It is the role of the district court to make certain that testimony admitted under Rule 702 "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see also Wood v. Minnesota Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997). The Court reviewed Gardner's and Turner's qualifications and proposed

testimony and considered the threshold requirements for admissibility under Rule 702. *Daubert*, 509 U.S. at 591. Gardner was extensively qualified in independent claims adjusting[2] and gave limited testimony based upon facts and data in the record and relevant to the question of the extent of Bluewood's water damage. (Tr. 14: 10-13; 23: 3-11). Gardner further testified that the amount taken by Cincinnati for depreciation was based on 18 years' experience as an adjuster and would be returned to Bluewood upon repair. (Tr. 47: 11-16). Gardner's testimony was properly admitted under Fed. R. Evid. 702. Similarly, Ivan Turner's testimony on remediation of water and mold damage was limited to his evaluation based on his skill and experience.[3] Turner was retained as an expert in mold damage and remediation; Bluewood's counsel thoroughly tested his credibility before the jury. (Tr. 113, 162). The Court did not err in permitting Turner's expert testimony.

### 3. Mitigation of Damages

Bluewood argues that the Court committed prejudicial error by submitting Jury Instruction No. 14 with an instruction that Bluewood had a duty to mitigate its damages. Jury Instruction No. 14, based on Missouri Approved Instructions 4.01 and 32.29 read in pertinent part:

---

[2]Gardner has professional certifications in property estimating and liability claims. He is a Registered Professional Adjuster, Associate in Claims and a past president of the Kansas City Property Claims Association.

[3]Turner is the President of AeroDry Disaster Restoration and has 20 years' experience in emergency drying and restoration including certification for remediation of mold.

9

> You are also instructed that Bluewood, Inc. had a duty under the law to mitigate its damages – that is, to exercise ordinary care under the circumstances to minimize its damages. Therefore if you find by the greater weight of the evidence that Bluewood, Inc. failed to remediate the water damage at the Broadmoor Apartments after the water damage occurred, and Bluewood. Inc. thereby failed to exercise ordinary care to mitigate its damages then you must reduce Bluewood, Inc.'s damages by the amount it reasonably could have avoided.

Bluewood argues that "there was no substantial or competent evidence to support" the propositions that Bluewood failed to remediate water damage or Bluewood "failed to exercise ordinary care to mitigate its damages" and the instruction was in any case "vague" and "indefinite." (Bluewood Mot. ¶ 2(g)(h)). A "roving commission" occurs when an instruction assumes a disputed fact or submits an abstract legal question. *Davis v. Jefferson Savings & Loan Association,* 820 S.W.2d 549, 556 (Mo. Ct. App. 1991). The jury heard evidence from Tim Gardner and Keith Quevreaux that the Broadmoor Apartments maintenance team delayed necessary action to prevent further water and mold damage. (Tr. 67, 74-75). The jury further heard evidence giving meaning to the phrase "mitigate damages" and therefore the instruction did not give the jury a roving commission. Substantial and competent evidence supported submission of the instruction to the jury and the jury's finding is well supported by the evidence.

### 4. Mold Damage

The Policy excludes loss "caused by or resulting from . . . [r]ust, corrosion, fungus, decay . . . ." (Policy ¶ 2(d)(2)). Bluewood argues that the Court erred by overruling Bluewood's objection to Cincinnati's closing statement that "Bluewood's mold damage is not covered under the insurance policy." (Bluewood Mot. ¶ 2(j)). Cincinnati's counsel

stated during closing argument that "[t]he only thing we're not going to appraise is the mold because that's not covered." (Tr. 184: 13-14). Bluewood argues that under "all the evidence and under applicable law" if covered water damage causes mold, then it is a covered peril. (Bluewood Mot. ¶ 2(j)); *Pace Properties v. American Manufacturers Mutual Ins. Co.*, 918 S.W.2d 883 (Mo. Ct. App. 1996); *Pakmark Corp. v. Liberty Mutual Ins. Co.*, 943 S.W.2d 256 (Mo. Ct. App. 1997); *Toumayan v. State Farm General Ins. Co.*, 970 S.W.2d 822, 825 (Mo. Ct. App. 1998). First, Bluewood paraphrases, misstates and takes out of context the remarks of Cincinnati's counsel at closing. That statement did nothing more than express Cincinnati's opinion as to coverage under the Policy. Cincinnati did not, as Bluewood implies, instruct the jury on Missouri law. (Tr. 184: 13-14). Second, the cases cited by Bluewood do not involve losses due to mold. Third, under Missouri law, a reasonable jury could find that the mold damage resulted from Bluewood's delay, not directly from the water damage.

Under Missouri law, courts apply a proximate cause analysis to determine if a loss was a direct result of an action. In *Toumayan v. State Farm General Ins. Co.*, 970 S.W.2d 822, 825 (Mo. Ct. App. 1998), the court applied a proximate cause analysis when faced with insurance language covering "direct physical loss" by broken sewer lines. *Id.* at 825. In *Toumayan*, a broken sewer line caused earth movement, which damaged plaintiffs' property. *Id.* at 823. The court ruled that it must apply proximate cause analysis unless the contract expressly provided otherwise. *Id.* at 826. *See also Cantrell v. Farm Bureau Town & Country Ins. Co. of Missouri*, 876 S.W.2d 660, 663 (Mo. Ct. App. 1994) (where

11

ambiguity exists in insurance contract, proximate cause analysis must be applied); *Cawthon v. State Farm Fire & Cas. Co.*, 965 F. Supp. 1262, 1266 (W.D.Mo. 1997) (citing *Beauty Supplies, Inc. v. Hanover Ins. Co.*, 526 S.W.2d 75, 76 (Mo. Ct. App. 1975) (whether damage was covered is a question of proximate cause)). The Bluewood trial centered on the question of whether the mold damage at the Broadmoor Apartments was due to water damage as a result of burst pipes or as a result of Bluewood's delay and inadequate efforts at remediation. Substantial evidence supported the jury's verdict that Bluewood's delay and failure to remediate caused the losses due to mold. Because the evidence supported the inference made by Cincinnati's counsel in closing argument, there was no error.

### 5. Bluewood's Claims for Negligent and Fraudulent Misrepresentation

Finally, Bluewood argues that the Court "committed prejudicial" error by dismissing its claims for negligent and fraudulent misrepresentation. Missouri law is clear that when a cause of action is based on an allegation that an insurance company negligently denied payment to an insured following the filing of a proof of loss, such claim is preempted by Mo. Rev. Stat. §§ 375.296 and 375.420, Missouri's vexatious refusal to pay statutes. *Meeker v. Shelter Mut. Ins. Co.*, 766 S.W.2d 733, 742-43 (Mo. Ct. App. 1989); *Shafer v. Automobile Club Inter-Insurance Exchange*, 778 S.W.2d 395, 400 (Mo. Ct. App. 1989). Similarly, a claim for fraudulent misrepresentation based solely on the insurer's refusal to pay under the contract is preempted. *See Creative Walking, Inc. v. American States Ins. Co.*, 25 S.W.3d 682, 688-89 n.5 (Mo. Ct. App. 2000). Because

12

Bluewood's claim for vexatious refusal to pay its insurance claim was properly submitted to the jury, the Court did not err in dismissing Bluewood's claims for negligent and fraudulent misrepresentation.

## III. Conclusion

The jury verdict awarding Bluewood $0.00 is not against the weight of the evidence and does not provide grounds for a new trial. Cincinnati paid Bluewood $93,280.00 on its claim, which the jury considered when evaluating the damages covered by the Policy. Because Bluewood has not raised any issues of new evidence and because the Court can address Bluewood's motion on the record before it, Bluewood's request for oral argument is denied. *See United States v. John Bernard Industries, Inc.*, 589 F.2d 1353, 1359 (8th Cir. 1979) ("Here, in the absence of new evidence, the District Court certainly did not abuse its discretion in ruling on the motions [for a new trial] without a hearing.").

Accordingly, it is hereby

ORDERED that Bluewood's Motion for a New Trial [Doc. # 97] is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: December 12, 2007  
Jefferson City, Missouri